UNITED STATES DISTRICT COURT
EASTERN OF NEW YORK

------------------------------------------------------------------- X

MONICA CHAMALE-EUSTACE,                          :

                     Plaintiff,             :     CIVIL CASE NO. 22-CV-5307

                                 :

          -against-              :     VERIFIED COMPLAINT

                                 :     PLAINTIFF DEMANDS A

STATE UNIVERSITY OF NEW YORK AT STONY   :     TRIAL BY JURY
BROOK, STONY BROOK UNIVERSITY            :
HOSPITAL, STONY BROOK MEDICINE, AND      :
MATTHEW BERCHUCK, M.D., INDIVIDUALLY,    :
AND AS AIDER AND ABETTOR.                :
                                 :

                  Defendants.       :

------------------------------------------------------------------- X

Plaintiff, Monica Chamale-Eustace ("Plaintiff" or "Monica"), by her attorney Brendan Chao, for her Complaint against Defendants the State University of New York at Stony Brook, Stony Brook University Hospital and Stony Brook Medicine (all entities collectively referred to as "Stony Brook"), and Dr. Matthew Berchuck ("Defendant Berchuck" or "Dr. Berchuck"), individually, and as aider and abettor (all collectively referred to as "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. ("Title VII"), the New York State Executive Law, as amended, §§ 290 et seq. ("NYSHRL"), and New York common laws. Specifically, Defendant Berchuck discriminated against Monica because of her gender in the terms, conditions, and privileges of her employment by subjecting her to a hostile work environment, treating her differently than her male co-workers, and physically assaulting and

battering her.  Dr. Berchuck's assault and battery of Plaintiff was not the first time he had

committed such acts in the workplace, and Stony Brook was aware of his propensity to assault

and batter women in the workplace.  Despite this knowledge Stony Brook chose to do nothing

until his assault and battery of Plaintiff, and Stony Brook only acted after Campus police became

involved.

**THE PARTIES**

2.      Monica is employed by as a Surgical Technologist for Defendants, and

was at all relevant times herein an "eligible employee" within the meaning of Title VII, and a

person within the meaning of the NYSHRL.

3.      Defendant Stony Brook is a non-profit research and academic center

located in Stony Brook, New York, and was at all relevant times herein an "employer" within the

meaning of Title VII, and an "employer" and "covered entity" within the meaning of the

NYSHRL.

4.      Upon information and belief, Defendant Berchuck was a Surgeon

employed by Stony Brook with supervisory authority over Plaintiff including, but not limited to,

having the power to give directives and make decisions that could affect Plaintiff's employment.

Defendant Berchuck, upon information and belief, is a citizen of the United State, and is a

resident of New York State.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1331, and

principles of supplemental jurisdiction, 28 U.S.C. § 1367.

2

6.      Plaintiff filed a Charge of Discrimination on or about November 5, 2021, that was dual-filed with the New York State Division of Human Rights ("NYSDHR"), and the Equal Employment Opportunity Commission ("EEOC").

7.      On or about August 2, 2022, Plaintiff received a Right to Sue Letter from the EEOC; less than ninety days have elapsed since her receipt of the Right to Sue Letter and the filing of the instant Complaint.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

FACTS

9.      Monica began her employment with Stony Brook in or about January 15, 2015, as a Surgical Technologist.

10.     She has worked in the medical field as a Surgical Technologist for more than twenty-two years.

11.     She was qualified for her position as a Surgical Technologist with Defendants, and throughout her employment with Stony Brook she was an excellent employee and always performed her duties in a diligent, thorough, professional and competent manner.

12.     As a Surgical Technologist, Monica was a member of the surgical team, and assisted surgeons in the performance of complex high risk or trauma surgical procedures.

13.     On or about August 14, 2021, Monica started a thirteen-hour shift that began at 6:00 PM and lasted until 7:00 AM.

14.     While waiting for a surgical patient during the setting up of the operating room, Monica was pulled off of the case and reassigned to a level one trauma anterior and posterior cervical neck surgery.  The neck surgery would be performed by Defendant Dr. Berchuck.

15.     Monica set up the operating room ("OR") and surgical instruments with several back tables and the surgery began at approximately 8:00 PM.  As the surgery progressed, Dr. Berchuck asked for an instrument and she went to one of the back tables to look for it.

16.     As she was getting the instrument, Dr. Berchuck yelled at her loudly to move and he then went to the back table and grabbed the instrument.  As he walked back to the operating table he ran into her and punched her arm with a closed fist while holding the instrument. Her whole body jerked back because she was wearing a wrap-around lead gown and a lead neck collar.

17.     As the surgery continued, Dr. Berchuck asked Monica for another instrument and she told him that she could not hear what he had said as they were wearing masks.  He responded by moving swiftly towards her and screamed in her ear "Can you hear me now?"  Monica was embarrassed and shocked by his behavior.  She tried to move her head away from him as he yelled into her ear, but her movements were restricted by the lead neck collar.

18.     The surgery continued with Dr. Berchuck acting in a hostile manner towards Monica.  He cursed at her and directed insults at her.  He even threw surgical instruments and unguarded needles towards her.

19.     There were other staff members in the room, two female and four male hospital staff, and two sales representatives - also male.  During the procedure, the female staff was also belittled, but in a less aggressive manner than Monica. The two male staff members and the two

4

sales representatives were not treated this way.  It was clear to her that he was treating the women in this manner because they were women.

20.     Dr. Berchuck yelled at the other female staff members that were assisting in the performance of the surgical procedure, but he never treated the male staff in such a disrespectful manner.

21.     Monica's overnight Nurse Manager, Sara Halstensen ("Ms. Halstensen") came into the room at around 12:00 AM to check up on the procedure.  Monica told her what had happened and that she was going to report Dr. Berchuck.  Ms. Halstensen told her that she would have to do it at the end of the shift because they were short staffed that night.

22.     Monica worked until her shift was over at 7:00 AM, and she was relieved by the morning crew.

23.     Once she was relieved she went to the front desk and saw Ms. Halstensen talking to the morning Nurse Manager, Rawena Abesamis ("Ms. Abesamis").  She was telling Ms. Abesamis what Dr. Berchuck did to Monica.

24.     Ms. Abesamis called the OR Manager, Cynthia Jorgensen ("Ms. Jorgensen"). Ms. Jorgensen spoke to Monica and she told her what she endured for six hours with Dr. Berchuck. Ms. Jorgensen told Monica to report it to the campus police.

25.     Monica called campus police and they came to the OR's front desk and she spoke to them about what had occurred in the OR during surgery with Dr. Berchuck.

26.     The two officers, Lt. Nolan and Officer Agolia told Monica that she had only two options: 1) go to Human Resources ("HR"); or 2) make a citizen's arrest.  Monica wanted to press criminal assault charges, but the campus police officers discouraged her because their

explanation seemed to involve her taking a personal role in Dr. Berchuck's arrest. They told her that she would have to tell Dr. Berchuck that she was making a citizen's arrest and testify against him in court.

27.     She was intimidated by the prospect of having to confront Dr. Berchuck in this manner, and so she told them she would address it through HR. The officers gave her their police report number and stated that they would submit a report to HR.

28.     Before leaving the OR, Lt. Nolan and Officer Agolia made Monica sign a medical release form and took pictures of her arm.

29.     Monica then returned to the front desk and was instructed by Ms. Halstensen and Ms. Abesamis to go to the Emergency Room. When she arrived at the ER they took pictures of her arm and x-rays, and she was discharged and sent home around 2:00 PM.

30.     Monica has since learned that Dr. Berchuck was suspended two months previously for similar misconduct, and that on another occasion he had thrown a roll of surgical tape at a female nurse.

31.     Monica also learned that another female Surgical Technician had a similar incident with Dr. Berchuck that involved him throwing surgical instruments during a procedure, but, upon information and belief HR did nothing about it. As a result of the incident, the female employee chose to transfer away from any further contact with Dr. Berchuck.

32.     Dr. Berchuck took inappropriate pictures of female staff members in the operating room cataloging all the "pretty ones."

33.     One of the nurses photographed complained to HR, but the outcome of that complaint is unknown.

34.     On another occasion, Dr. Berchuck asked a female nurse to look through a microscope that was in use during a surgical procedure.  When the nurse bent over to look through the microscope, Dr. Berchuck moved behind her and pressed himself against her buttocks.  Upon information and belief, the nurse reported the incident to HR.

35.     Dr. Berchuck mistreated and assaulted Monica and other female staff because they are women.  Stony Brook failed to address his previous misconduct, which led to his abuse and assault of Monica.

36.     As a result of Dr. Berchuck's assault and battery of Monica, she has suffered, among other things, limited movement and pain in both arms, rotator cuff tears, chronic pinched nerves in her neck, hearing loss in her left ear, left ear numbness, dizziness, migraines, nausea, vomiting, and eye pain.  She has undergone several surgical procedures to repair the damage caused by Dr. Berchuck.

## FIRST CAUSE OF ACTION
### (Hostile Work Environment in Violation of
### Title VII Against Defendant Stony Brook University Hospital)

37.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 as if separately set forth herein.

38.     At all relevant times, Plaintiff was an "employee" of Defendant for purposes of Title VII.

39.     Upon information and belief, Defendant Stony Brook is an "employer" for purposes of Title VII.

7

40.     Plaintiff endured harassment, verbal and physical aggression from Defendant Dr. Berchuck that was severe or pervasive.

41.     This harassment detrimentally affected Plaintiff, and was sufficiently severe or pervasive as to alter the terms and conditions of her employment and created a hostile, abusive working environment, and constituted discrimination against Plaintiff because of her sex with respect to the terms, conditions, and privileges of her employment, in violation of Title VII.

42.     A reasonable person would have found the harassment and discrimination Plaintiff experienced to be severe or pervasive, hostile and abusive, and Plaintiff herself subjectively found her work environment to be severe or pervasive, hostile and abusive.

43.     The acts complained of herein also constitute a continuing violation because Defendant Stony Brook had notice and knowledge of the harassment of Plaintiff, and other women at Defendant Stony Brook, but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

44.     Other women reported the harassment they were subjected to by Dr. Berchuck, but Defendant Stony Brook failed to exercise reasonable care to prevent and promptly correct the harassing behavior.  Defendant Stony Brook's disregard of their female employees' complaints resulted in Plaintiff and other similarly situated female staff members being subjected to verbal and physical aggression months after these complaints were made to them.

45.     Accordingly, Plaintiff's Complaint challenges all discriminatory conduct and harassment by Defendant Stony Brook as part of the violations complained of herein, even conduct that would otherwise be outside Title VII's limitations period.

8

46.     Since Defendant Stony Brook engaged in discriminatory practices with malice or with reckless indifference for Plaintiff's federally protected statutory rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**(Hostile Work Environment in Violation of
New York Human Rights Law)**

47.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 as if separately set forth herein.

48.     Plaintiff endured harassment, verbal and physical aggression from Defendant Dr. Berchuck that was severe or pervasive.

49.     This harassment detrimentally affected Plaintiff, and was sufficiently severe or pervasive as to alter the terms and conditions of her employment and create a hostile, abusive working environment, and constitutes discrimination against her because of her sex with respect to the terms, conditions, and privileges of her employment, in violation of New York State law.

50.     A reasonable person would have found the harassment and discrimination Plaintiff and other female employees experienced to be severe or pervasive, hostile and abusive, and Plaintiff herself subjectively found her work environment to be severe, pervasive, hostile and abusive.

51.     The acts complained of herein also constitute a continuing violation because Defendants had notice and knowledge of the harassment of female employees at Defendant Stony Brook, but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice, that resulted in Plaintiff being harassed, and verbally and physically attacked just for being a woman.

52.     Plaintiff reported the harassment to Defendant Stony Brook who had

received complaints from other female employees in the past about Dr. Berchuck's behavior towards women, but had failed to exercise reasonable care to prevent and correct promptly the harassing behavior before Dr. Berchuck's physical and verbal abuse of Plaintiff because of her gender.

53.     Since Defendants engaged in their discriminatory practices with malice or with reckless disregard for Plaintiff's protected rights, Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Disparate Treatment in Violation of Title VII**
**Against Defendant Stony Brook University Hospital)**

54.     Plaintiff repeats and realleges the allegations contained in paragraph 1 through 53 as if separately set forth herein.

55.     At all relevant times, Plaintiff was an "employee" of Defendant for purposes of Title VII.

56.     Upon information and belief, Defendant Stony Brook is an "employer" for purposes of Title VII.

57.     Defendants, by and through their agents and employees, discriminated against Plaintiff in her employment via unequal terms and conditions of employment, as set forth in the preceding factual paragraphs.

58.     Plaintiff belongs to a protected class.

59.     Plaintiff was qualified to perform the functions of her job.

60.     Defendants knew and/or should have known that Plaintiff was subjected to discriminatory practices.

61.     Defendant Berchuck treated Plaintiff differently than other similarly-situated male employees because of her gender.

62.     Plaintiff told a supervisor during the procedure that she was being treated

10

in this manner, but was told that the hospital was short staffed and any complaint would have to wait.

63.     Defendant lacked any business reason or justification for the aforesaid disparate treatment of Plaintiff, and instead subjected Plaintiff to adverse employment actions based on Plaintiff's gender.

64.     Defendants' continued the aforesaid discriminatory treatment of Plaintiff on a continuous, ongoing basis, and Defendants' above alleged conduct was part of a systemic pattern and practice of discrimination against female staff members.

65.     As a direct result of said acts, Plaintiff seek an award of compensatory damages, liquidated damages, attorney's fees and costs, and an order directing Defendants to cease and desist from its discriminatory practices, together with any further and additional relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Disparate Treatment in Violation of
### New York Human Rights Laws)

66.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 65 as if separately set forth herein.

67.     Defendant Berchuck had, at all relevant times, the power to do more than carry out personnel decisions made by others; he had the power and authority to make personnel decisions, including, disciplining employees he supervised, including Plaintiff.

68.     Defendant Berchuck also participated in acts of discrimination against Plaintiff as described herein.

69.     Defendants knew and/or should have known that Plaintiff was subjected to discriminatory practices.

70.     Defendant Berchuck treated Plaintiff and other female staff members

differently than other similarly-situated male employees because of her gender.

71.     Defendant lacked any business reason or justification for the aforesaid disparate treatment of Plaintiff, and instead subjected Plaintiff to adverse employment actions based on Plaintiff's gender.

72.     Defendants' continued the aforesaid discriminatory treatment of Plaintiff on a continuous, ongoing basis, and Defendants' above alleged conduct was part of a systemic pattern and practice of discrimination against female staff members.

73.     Since Defendant Berchuck's discriminatory actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's statutory rights, Plaintiff also requests an award of punitive damages under the N.Y.S. Human Rights Law.

74.     Defendant Berchuck treated Plaintiff and other female staff members differently than other similarly-situated male employees because of her gender.

## FIFTH CAUSE OF ACTION
### (Battery)

75.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 74 as if separately set forth herein.

76.     As more fully set forth above, Defendants unlawfully subjected Plaintiff to battery, *inter alia*, intentionally subjecting plaintiff to non-consensual, harmful or offensive physical contact resulting in harm or offense to Plaintiff.

77.     That as direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the lower courts.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

1.     On the First Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

2.     On the Second Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

3.     On the Third Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

4.     On the Fourth Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

5.     On the Fifth Cause of Action, front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest;

6.     Such other and further relief as this Court may deem just and proper.

Dated: September 6, 2022
Rockville Centre, N.Y.

BRENDAN CHAO
Attorney & Counsellor at Law

By: *Brendan Chao*

Brendan Chao (BC8811)
Attorney for Plaintiff
50 Merrick Road, Suite 200
Rockville Centre, N.Y. 11570
(516) 466-2033

13

# DECLARATION

I, MONICA CHAMALE-EUSTACE, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the allegations made in the foregoing Verified Complaint are true and correct to the best of my knowledge.

Dated: September 06, 2022

MONICA CHAMALE-EUSTACE